Frank Del Vecchio, J.
These are motions for preliminary injunctions heard at the same time in two separate actions by which plaintiff seeks orders permanently enjoining defendants from advertising or selling any of plaintiff’s products at less than the minimum price fixed in fair-trade contracts alleged to have been entered into between plaintiff and many retailers within the State.
The complaints in these actions are substantially similar to that held legally sufficient as stating a cause of action for violation of fair-trade restrictions in Bourjois Sales Corp. v. Dorfman (273 N. Y. 167).
The answers deny that such contracts exist or that defendants have committed any violation thereof and plead as affirmative defenses (1) that defendants never executed any fair-trade contract and had no knowledge of such contracts by which plaintiff sought to regulate or control the price of its commodities, and, further, that at the time they purchased plaintiff’s products defendants had no notice of a fair-trade program covering the articles; (2) that the prices fixed by the contracts have long been disregarded and violated by other sellers of plaintiff’s products to the knowledge of plaintiff and without any steps toward enforcement being taken by plaintiff, such that there has been a waiver of plaintiff’s rights under the contracts; (3) that the products in question do not bear the trademark of the plaintiff and are not in fair and open competition with commodities of the same general class produced by others; and (4) that plaintiff’s conduct in seeking to enjoin the sales in question is inequitable and unconscionable.
It is not necessary that defendants shall have signed fair-trade agreements with plaintiff to be bound thereby. (General Business Law, § 369-h; Ampex Corp. v. Goody Audio Center, 5 Misc 2d 1072, 1077.)
*794 The only question now before the court is whether plaintiff has shown circumstances such as warrant the issuance of the temporary injunctions pending trial of the actions for permanent injunctions. ‘ ‘ Preliminary injunction is a drastic remedy and is ordinarily not granted, except to maintain the status quo, and even then, only upon a very substantial and convincing showing that there has been unfair competition”. (Litwin v. Maddux, 7 Misc 2d 750, 759.) "What was said in the Litwin case with regard to unfair competition in the field of literary publications applies also to unfair competition in the form of fair-trade violations.
It is the view of the court that plaintiff has met this burden and has furnished evidence of the facts set forth in its complaints sufficient to justify the granting of injunctions pendente lite with regard to defendants’ sales of plaintiff’s fair-traded products.
In support of the present motions, plaintiff has submitted (1) the original summonses and complaints with attached exhibits, (2) affidavits by its associate counsel Edward D. Downing, by its sales representatives Robert J. Morgan and Thomas L. McEvoy and by Raymond W. Hackbarth, Esq., a member of the law firm representing plaintiff in this litigation, and (3) a file of exhibits referred to in the affidavits.
The affidavits of Downing state that there are now in full force in excess of 6,000 fair-trade agreements executed between plaintiff and drug retailers within the State of New York. In support of this statement there is included in the file of exhibits and also attached to the complaints a copy of an executed form ‘ ‘ Retailers Fair Trade Agreement ’ ’. As evidence that plaintiff’s products ‘ ‘ Alka-Seltzer ”, “Bactine” and “ One-A-Day (Brand) Multiple Vitamins ” are the subject of fair-trade prices, plaintiff has offered printed lists dated January 1,1957 and March 15,1958 indicating the package units of such products together with the manufacturer’s price to dealers, the full retail price and the fair-trade price.
The affidavits of the sales representatives Morgan and McEvoy set forth by date specific occasions on which they made purchases of “Alka-Seltzer”, “Bactine” and “One-A-Day (Brand) Multiple Vitamins” from defendants’ stores at less than the fair-trade prices. As evidence of these purchases plaintiff has submitted outer cartons of the articles bought bearing sales prices below those fixed by plaintiff together with dated cash register slips of the transactions.
The answering affidavits submitted by the president of defendant corporations (who is one and the same person) dwell at *795 length on the claimed unfairness of a fair-trade program and public disadvantage resulting from price-fixing. These arguments however are inappropriate in this forum. As the courts have frequently pointed out, the wisdom and desirability of the system of fair trade is within the exclusive province of the Legislature which has seen fit to enact sections 369-a to 369-c of the General Business Law in protection of prices of certain qualifying commodities. The only function of the courts is to enforce these sections when the requirements of the statute have been met. (Nebbia v. New York, 291 U. S. 502; Calvert Distillers Corp. v. Nussbaum Liq. Store, 166 Misc. 342; Fogel v. Bolet, 194 Misc. 1019.)
Defendants’ president also states that “ there is no proof or evidence whatsoever of notice to the defendant prior to its purchase of these products ”, and cites Cluett, Peabody & Co. v. J. W. Mays, Inc. (5 A D 2d 140) as authority that plaintiff is therefore barred from injunctive relief.
There is no question that the Cluett, Peabody decision makes it necessary for a defendant retailer to have notice of fair-trade prices at the time merchandise is purchased by him, and not merely at the time of resale, in order to entitle the manufacturer to compel the retailer to abide by such prices. A careful reading of the opinion however makes it clear that lack of knowledge of resale restrictions at the time of purchase is a matter of affirmative defense and that plaintiff is not bound to allege or prove defendants’ actual notice of fair-trade prices at the time of purchase. (Supra, p. 149; see, also, Special Term opinion, 6 Misc 2d 145, 147, revd. on other grounds.)
In this connection, defendants have failed to offer any proof in support of their claim that they did not know of plaintiff’s fixed prices at the time they purchased plaintiff’s products, other than the bare statement to that effect contained in the affidavits of defendants’ president. Plaintiff, on the other hand, has submitted affidavits by its associate counsel to the effect that on numerous occasions the deponent sent letters to defendants advising them of plaintiff’s fair-trade program and enclosing current fair-trade price lists, which affidavits are supported by documentary evidence. In the case of the defendant Family Bargain Center, Inc., receipt of such a letter dated October 31, 1957 and sent by certified mail is established by a United States Post Office receipt signed “ Family Bargain Cntr — J. Lavine ”. In the case of the defendant State Street Mill Bargain Center Inc., a United States Post Office receipt for plaintiff’s certified letter dated December 9, 1957 was signed “ State St. Mill— Graziano”. Both these receipts were presented to the court. *796 Defendant’s papers in the State Street Mill Bargain Center action include an affidavit by its employee and manager James Graziano which however makes no reference to the above postal receipt and does not deny delivery of the letter of December 9,1957.
Th affidavits of plaintiff’s associate counsel states that five warning letters, in addition to the one dated October 31, 1957, were sent to defendant Family Bargain Center, Inc. by certified mail but that delivery of each was refused by the addressee. This statement is supported by three envelopes directed to Family Bargain, bearing the' United States Post Office stamp “ REFUSED ”, which are included in plaintiff’s exhibits. It also appears that some of these same letters, together with others of like content, were forwarded to defendants by regular mail in envelopes bearing return addresses, none of which however were returned.
In spite of all this evidence of notice of plaintiff’s fair-trade program having been extended to them, defendants have offered nothing but their bare allegations that they had no knowledge of fixed prices at the time they purchased plaintiff’s products. They have not explained the signed receipts for the warning letters of October 31, 1957 and December 9, 1957 nor have they made any attempt to show that plaintiff’s products being sold by them were acquired on dates prior to the receipt of these letters.
On this state of the evidence, defendants have failed to make any showing to support a defense of lack of knowledge of plaintiff’s fair-trade program and are not entitled under the Cluett, Peabody case to defeat the present application for temporary injunctions on that ground.
The evidence is also insufficient to sustain defendants’ claims that plaintiff has waived or abandoned its fair-trade program through failure to enforce the same.
Although defendants made a broad statement that ‘ ‘ the alleged prices fixed by the contract set forth in plaintiff’s complaint herein have for a long period of time prior to commencement of this action, been generally disregarded and violated by all persons selling these commodities in Utica and surrounding areas in the State of New York ”, they have failed to point out even a single instance of sales below fair-trade prices which plaintiff has not sought to prohibit. Plaintiff, on the other hand, has furnished an affidavit by a member of the law firm representing it, naming four violators of plaintiff’s fair-trade program and describing the steps which it has taken *797 against each (including lawsuits against the defendants herein and one other violator) to enforce compliance.
The question of waiver and abandonment of fair-trade programs have been discussed at length in General Elec. Co. v. Macy & Co. (199 Misc. 87, appeal dismissed 278 App. Div. 940). Concerning the requirement of reasonable and diligent enforcement of fixed prices, Justice Greenberg said (p. 93): “In establishing this requirement the courts have held that it is not necessary that there be simultaneous enforcement against all violators nor that the price structure be perfect.” Further, in speaking of the principles of fair-trade price enforcement, it was said: “These principles are not absolute nor are they applied mechanically by the courts. They are, rather, applied in the light of the facts of each case and in order to attain the objectives of the statute and an equitable result between the parties.” (p. 93). See, also, Calvert Distillers Corp. v. Nussbaum Liq. Store, 166 Misc. 342, supra.)
In the cases at bar, this court is satisfied that plaintiff has shown sufficient evidence of enforcement, uncontradicted by evidence from defendants, to. justify granting a temporary injunction against violation of its fair-trade program pending trial of the actions.
The third defense pleaded in the answers — that the products in question do not bear the trade-mark of the plaintiff and are not in fair and open competition with commodities of the same general class — is entirely without support in defendants’ papers. Plaintiff, however, sets forth in detail facts regarding long continued manufacture and sale of the products as well as the registration of the appropriate trade-marks pursuant to statutes of the United States. Included in the exhibits are cartons in which some of the items in question are packaged, all of which bear registered trade-marks.
Finally, defendants assert that plaintiff is acting inequitably and unconscionably in seeking the present injunction for the reason that it seeks to enjoin the sale of “ all ” of its commodities. True it is that the “ "Wherefore clause” of the complaints ask for such relief. It is apparent, however, from the body of the complaints and from the papers submitted on this application that plaintiff’s present action is concerned only with the items £ £ Alka-Seltzer ”, “ Bactine ’ ’ and £ £ One-A-Day (Brand) Multiple Vitamins ”, which have been shown by substantial evidence to come within the provisions of sections 369-a et seq. of the General Business Law.
*798 Plaintiff is entitled to an injunction pendente lite as prayed for in the notice of motion with regard to its products ‘ ‘ AlkaSeltzer ”, “ Bactine ” and “ One-A-Day (Brand) Multiple Vitamins ’ ’. The amount of the bond to be furnished will be fixed in the order.
Prepare order accordingly.